Case 1:21-cr-20112-UU Document 3 Entered on FLSD Docket 02/26/2021 Page 1 of 16

FILED by \_\_\_\_JA\_\_\_\_ D.C.

Feb 25, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **21-20112-CR-UNGARO/REID**

18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

WILLIAM CLERO and
CESAR ARMANDO PEREZ AMADOR,

　　　　　Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

#### Drug Cost-Savings Programs

1. Drug cost-savings programs (also known as co-pay or cost-sharing programs) were programs offered by pharmaceutical manufacturers to reduce the out-of-pocket expense to individuals buying certain prescription drugs supplied by those manufacturers. The programs were offered to individuals with commercial insurance policies that did not cover the full cost of those drugs, as well as to individuals without health insurance coverage. Cost-savings programs usually took the form of a coupon, often called a savings card, which had a dollar value that reduced the cost of the drug being purchased.

2. Individuals who took prescription drugs for which a cost-savings program was available could obtain a savings card through several means, often from the prescribing physician or by downloading a card from a website set up by the manufacturer. The individual was expected to present the savings card to the pharmacy where the individual was having the prescription filled.

3. When a pharmacy filled the prescription for a drug covered by a cost-savings program, the pharmacy submitted a claim electronically to a pharmacy benefit manager (PBM) for payment. PBMs were companies that manage prescription drug benefits on behalf of health insurance plans. The individual's primary insurer usually paid some or most of the cost of the prescription drug.

4. After the claim was processed by the primary insurer, the pharmacy submitted a secondary claim to the cost-savings program for the value of the savings card, subject to a maximum savings limit for the cost-savings program. Each savings card for a particular drug had routing information similar to a private insurance card that allowed the electronic claim to be routed to a company that processed the claim on behalf of the pharmaceutical manufacturers, referred to here as a "program administrator."

5. A pharmacy submitting such claims identified itself by its National Provider Identifier (NPI) or its National Council for Prescription Drug Program (NCPDP) number. The NPI was a unique identification number for covered health care providers created as a Health Insurance Portability and Accountability Act (HIPAA) Administrative Simplification Standard. The NCPDP number was a seven-digit number assigned to every licensed pharmacy in the United States. These numbers ensured the proper routing of reimbursements under the cost-savings programs by the program administrators. In order to be reimbursed, the pharmacy submitted a secondary claim to a

drug cost-savings program that contained such information as the beneficiary's biographical information, prescription details, date of service, primary insurer, and the savings card number.

6.      If the claim for payment from the drug cost-savings program was allowed, the program administrator paid, on behalf of the manufacturer, for some or all of the out-of-pocket cost of the drug after payment by the primary insurer. A pharmacy could also submit a primary claim to a cost-savings program's administrator on behalf of individuals without insurance coverage, commonly referred to as "cash-paying patients." The program administrator processed such claims in the same manner as the secondary claims.

### The Pharmacies

7.      AV Drug Ph, LLC was a Florida corporation with a principal address of 4993 S.W. 74th Court, Miami, Florida, purportedly doing business as a retail pharmacy using the name AVDrugs Corp. and providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

8.      Fenix Pharmacy Corp was a Florida corporation located at 10521 S.W. 40th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

9.      26 Pharmacy & Discount Inc. was a Florida corporation located at 5767 S.W. 8th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

10.     Rubi Pharmacy Inc. was a Florida corporation located at 5143 S.W. 8th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

11. Delac Pharmacy Corp was a Florida corporation located at 10521 S.W. 40th Street, Suite A, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

12. Sunshine Pharmacy Corp was a Florida corporation located at 5767 S.W. 8th Street, Suite A, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

13. Benitez Pharmacy Corp was a Florida corporation located at 4769 S.W. 8th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

14. Silvia's Pharmacy Corp was a Florida corporation located at 251 Park Boulevard, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

15. Advance Pharmacy PH Corp was a Florida corporation located at 5143 S.W. 8th Street, Suite A, Coral Gables, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

16. Rosario's Pharmacy Corp was a Florida corporation located at 5309 S.W. 8th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

17. Progressive Pharma Corp was a Florida corporation located at 8150 S.W. 8th Street, Suite 121, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

18. Sun Pharma Corp was a Florida corporation located at 10521 S.W. 40th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

19. Del Pharma Corp was a Florida corporation located at 5767 S.W. 8th Street, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

20. Ava Pharmacy Corp was a Florida corporation located at 516 S.W. 57th Avenue, Suite 526, Miami, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

21. Abel Pharmacy Corp was a Florida corporation located at 5143 S.W. 8th Street, Coral Gables, Florida, purportedly doing business as a retail pharmacy providing prescription drugs to both uninsured individuals and individuals with commercial insurance.

### Related Companies

22. Green Eagle Corporation was a Florida corporation with a principal address of 4721 S.W. 74th Avenue, Miami, Florida.

23. Clear Options Corp was a Florida corporation with a principal address of 10710 S.W. 67th Terrace, Miami, Florida.

### The Defendants

24. **WILLIAM CLERO**, a resident of Miami-Dade County, was an owner, president and registered agent of Green Eagle Corporation; an owner, president and registered agent of Clear Options Corp; and a beneficial owner of the companies listed in paragraphs 7-21 above (The Pharmacies).

25.     **CESAR ARMANDO PEREZ AMADOR**, a resident of Miami-Dade County, was an owner and officer of Green Eagle Corporation; an operator of Clear Options Corp; and a beneficial owner of The Pharmacies.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD AND MAIL FRAUD
## (18 U.S.C. § 1349)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around December, 2014, the exact date being unknown to the Grand Jury, and continuing through on or about the date of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**WILLIAM CLERO and
CESAR ARMANDO PEREZ AMADOR,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States of America, that is:

a.      to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343 (wire fraud); and

b.     to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service, according to the directions thereon, in violation of Title 18, United States Code, Section 1341 (mail fraud).

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the defendants **WILLIAM CLERO**, **CESAR ARMANDO PEREZ AMADOR** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to drug cost-savings programs; (b) concealing the submission of false and fraudulent claims to cost-savings programs, and the receipt and transfer of fraud proceeds; and (c) diverting the fraud proceeds for the personal use and benefit of themselves and others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.     **WILLIAM CLERO** and **CESAR ARMANDO PEREZ AMADOR** established and controlled numerous pharmacies, including The Pharmacies, and concealed their ownership and control of The Pharmacies through the use of nominee owners.

5.     **WILLIAM CLERO, CESAR ARMANDO PEREZ AMADOR** and their co-conspirators, through The Pharmacies, submitted and caused to be submitted, via interstate wire

communications, false and fraudulent claims to cost-savings programs for drugs that: (a) physicians had not prescribed, (b) The Pharmacies had not dispensed to patients, and/or (c) were submitted for patients who were fictitious individuals that did not exist.

6. In furtherance of the conspiracy, **WILLIAM CLERO, CESAR ARMANDO PEREZ AMADOR** and their co-conspirators caused wire communications to be transmitted in interstate and foreign commerce, including wire transfers of funds from program administrators, on behalf of pharmaceutical manufacturers, to certain designated bank accounts for The Pharmacies.

7. In furtherance of the conspiracy, **WILLIAM CLERO, CESAR ARMANDO PEREZ AMADOR** and their co-conspirators caused certain mail matter to be sent and delivered to The Pharmacies by the United States Postal Service, including checks from program administrators as payments for fraudulent claims submitted under the cost-savings programs.

8. As a result of the false and fraudulent claims submitted to cost-saving programs, the program administrators, on behalf of pharmaceutical manufacturers, made payments to The Pharmacies in excess of $8 million.

9. **WILLIAM CLERO, CESAR ARMANDO PEREZ AMADOR** and their co-conspirators used the proceeds of the fraud scheme for their own use and benefit, for the benefit of others, and to further the fraud scheme.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## CONSPIRACY TO COMMIT MONEY LAUNDERING
## (18 U.S.C. § 1956(h))

Beginning in or around December, 2014, the exact date being unknown to the Grand Jury, and continuing through on or about the date of this Indictment, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**WILLIAM CLERO and**
**CESAR ARMANDO PEREZ AMADOR,**

knowingly and willfully combined, conspired, and agreed with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956 and 1957, that is:

    a.    to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the financial transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    b.    to knowingly engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity was mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3-8
## MONEY LAUNDERING
## (18 U.S.C. § 1957)

1. On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as further identified in each count below, did knowingly engage and attempt to engage in a monetary transaction, as specified below, affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity:

| Count | Approximate Date | Defendant | Monetary Transaction |
|---|---|---|---|
| 3 | 1/18/2017 | CESAR ARMANDO PEREZ AMADOR | Wire transfer of $30,502.51 from Green Eagle Corporation's Citibank account in Miami, Florida, to Hotel W Barcelona's bank account at BBVA Spain |
| 4 | 4/14/2017 | CESAR ARMANDO PEREZ AMADOR | Wire transfer of $25,000 from Green Eagle Corporation's Citibank account in Miami, Florida, to defendants' joint personal account at Citibank |
| 5 | 10/19/2017 | WILLIAM CLERO | Wire transfer of $30,000 from Green Eagle Corporation's Citibank account in Miami, Florida, to Fountainebleau Hotel's bank account at Wells Fargo |
| 6 | 12/28/2017 | WILLIAM CLERO | Wire transfer of $40,000 from Green Eagle Corporation's Citibank account in Miami, Florida, to the Ritz Carlton, NY Central Park's bank account at Bank of America |
| 7 | 3/2/2018 | CESAR ARMANDO PEREZ AMADOR | Cash withdrawal of $16,250 from Green Eagle Corporation's Citibank account in Miami, Florida |
| 8 | 10/18/2019 | WILLIAM CLERO | ATM deposit of Change Healthcare check for $18,255.97 into Abel Pharmacy Corp. account at Citibank |

2.      It is further alleged that the specified unlawful activity was mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations contained in this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **WILLIAM CLERO** and **CESAR ARMANDO PEREZ AMADOR,** have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Sections 1956 and/or 1957, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States, any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

   a. 2016 BMW X5 vehicle;

   b. 2016 GMC Yukon Denali truck;

   c. 2018 GMC Sierra 1500 Denali truck; and

    d.  2019 Cadillac Escalade vehicle.

  5.  The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

  6.  If the property subject to forfeiture, as a result of any act or omission of the defendant,

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p). Such substitute property includes, but is not limited to, the following:

    (i) real property located at 10710 S.W. 67th Terrace, Miami, FL 33173, more specifically described as:

      Lot 11, Block 1, of Golden West, according to the Plat thereof, as recorded in Plat Book 109, Page 51, of the Public Records of Miami-Dade County, Florida;

    (ii) real property located at 13510 S.W. 96th Street, Miami, FL 33186, more specifically described as:

      Lot 7, Block 9, of Calusa Club Estates Third Addition, according to the Plat thereof, as recorded in Plat Book 103, Page 78, of the Public Records of

Miami-Dade County, Florida.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C)and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____ for:
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_____
AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

WILLIAM CLERO and CESAR ARMANDO PEREZ AMADOR

_____ Defendants. _____ /

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
- ✓ Miami
- ___ Key West
- ___ FTL
- ___ WPB
- ___ FTP

New defendant(s)   Yes ___   No ___
Number of new defendants  ___
Total number of counts    ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    Yes
   List language and/or dialect    SPANISH

4. This case will take __6__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    0 to 5 days      ___
   - II   6 to 10 days     ✓
   - III  11 to 20 days    ___
   - IV   21 to 60 days    ___
   - V    61 days and over ___

   (Check only one)
   - Petty   ___
   - Minor   ___
   - Misdem. ___
   - Felony  ✓

6. Has this case previously been filed in this District Court?    (Yes or No)   No
   If yes: Judge _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___    No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___    No ✓

_____
AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500795

*Penalty Sheet(s) attached

REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** WILLIAM CLERO

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:     Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**     Twenty (20) years' imprisonment

Counts #: 5, 6, 8

Engaging in Money Laundering Transaction

Title 18, United States Code, Section 1957

**\*Max. Penalty:**     Ten (10) years' imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** CESAR ARMANDO PEREZ AMADOR

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire Fraud and Mail Fraud

Title 18, United States Code, Section 1349

\* **Max. Penalty:**   Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

\***Max. Penalty:**   Twenty (20) years' imprisonment

Counts #: 3, 4, 7

Engaging in Money Laundering Transaction

Title 18, United States Code, Section 1957

\***Max. Penalty:**   Ten (10) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**